**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MAMIE ELIZABETH SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | Case No. 05-CV-0138-CVE-SAJ |
| | ) | |
| **ROGERS COUNTY CRIMINAL** | ) | |
| **JUSTICE AUTHORITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is the motion for summary judgment (Dkt. # 42) filed by defendant Rogers County Criminal Justice Authority ("RCCJA"). Plaintiff alleges that RCCJA violated her constitutional rights in contravention of 42 U.S.C. § 1983. Specifically, plaintiff alleges that she was injured while an inmate at Rogers County Jail[1] because of defendant's deliberate indifference to substantial risk of serious harm, in violation of the Eighth Amendment of U.S. Constitution. Dkt. # 26. Defendant seeks summary judgment, arguing that there is no underlying constitutional

---

[1] The RCCJA is a Title 60 Public Trust, which is statutorily separate and distinct from the independently elected sheriff. The RCCJA has no duty to hire, train, supervise, or discipline the county jailers. Dkt. # 42, Ex. H, Operation, Maintenance and Administration Agreement of the Rogers County Criminal Justice System, at 3; see Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988) ("Under Oklahoma law, the Board [of County Commissioners] has no statutory duty to hire, train, supervise, or discipline the county sheriffs or their deputies."); Okla. Stat. tit. 19, § 513 (the sheriff shall be liable for the acts of his deputies and jailers); Okla. Stat. tit. 19, § 904.3 (County Jail Trust Authority has the duty to promote "the establishment and maintenance of an effective corrections and detention system"). Nevertheless, on February 11, 2004, the parties stipulated that "the RCCJA was the entity vested with the operation and management of the Rogers County Jail and therefore the proper party to defend against the claims asserted by the Plaintiff." Dkt. # 2, Joint Motion to Substitute Parties. Given that the stipulation of the RCCJA as the real party in interest and the dismissal of the Board of County Commissioners is law of the case, the Court will deem all jail policies, procedures, and customs as those of the RCCJA for purposes of this case.

violation and that there is no evidence of causation, thus precluding municipal liability under section 1983.

**I.**

Plaintiff was arrested on July 5, 2002, and booked at the Rogers County Jail at approximately 11:00 p.m. Jimmie O. Sneed was one of the jailers on duty that evening who assisted with plaintiff's intake. Sneed and plaintiff recognized each other from having met in 1995. After completing all intake forms, plaintiff was escorted to a cell where another inmate was asleep on the lower bunk, leaving only the upper bunk vacant. Plaintiff moved the available mattress to the floor and slept the night of July 5, 2002 on the mattress on the ground. Plaintiff states that she did not voluntarily sleep on the upper bunk because her alleged blindness prevented her from doing so safely.

Plaintiff alleges that she is disabled and was denied appropriate sleeping arrangements. The Rogers County Sheriff's Office has a policy which requires that all disabled inmates "be housed in areas appropriate to their needs." Dkt. # 42, Ex. G, Special Health Care Programs. Had plaintiff been determined to be blind, proper procedure would have required that she be placed in an isolation cell to prevent injury. Dkt. # 42, Ex. B, Deposition of Sneed, at 31-32. According to Sneed, policies and procedures require the intake officer to determine whether a new inmate has a disability which requires special accommodation and to document such determination. Dkt. # 42, Ex. B, Deposition of Sneed, at 27-28. There is a dispute about why jailers failed to identify plaintiff as disabled. While there is no evidence that plaintiff is legally blind, as defined under Oklahoma law,[2] plaintiff's medical records show that she suffered severe vision loss in 1994. Dkt. # 43, Ex. C-G. Plaintiff signed her medical intake form, which does not mention plaintiff's alleged vision impairment. Dkt.

---

[2]    Okla. Admin. Code § 612:10-11-2(a)(1)(A) (2005).

# 42, Ex. A, at 4. Plaintiff does not argue that she self-identified as disabled upon intake. According to plaintiff, Sneed was aware of plaintiff's alleged vision impairment, announced the disability to other jailers, and assisted her through the intake process. Dkt. # 43, Ex. A, Deposition of Smith, at 88. Sneed denies having any knowledge of plaintiff's disability prior to this litigation. Dkt. # 42, Ex. B, Deposition of Sneed, at 27. Sneed allegedly concluded plaintiff did not have trouble seeing because she recognized him when she entered the jail. Id. Regardless, it is undisputed that plaintiff was not designated as disabled by jail personnel and was directed to sleep on an upper bunk.

On July 6, 2002, a jailer allegedly told plaintiff to return her mattress to the upper bunk. Dkt. # 43, Ex. A, Deposition of Smith, at 103. Plaintiff protested and explained that she could not see well. Id. The jailer allegedly insisted and inmates helped plaintiff place her mattress on the upper bunk, where she subsequently took a nap. Id. at 98. That evening, a jailer conducted a count of inmates as required by the "Inmate Accountability" policy of the Rogers County Sheriff's Office. See Dkt. # 43, Ex. K, Inmate Accountability. In her effort to attend the count, plaintiff allegedly fell from the upper bunk and injured her right knee. She claims she felt rushed. Dkt. # 43, Ex. A, Deposition of Smith, at 121. Defendant argues that plaintiff voluntarily jumped down from the bunk bed. Dkt. # 42, Ex. F, at 3. Plaintiff alleges that her cellmate attempted to return to their cell to assist plaintiff down from the upper bunk, but the jailer demanded that the cellmate stay in the line-up for the count. Dkt. # 43, Ex. A, Deposition of Smith, at 107-08. The jailer's instructions allegedly left plaintiff alone to navigate the bunk bed which had no ladder, causing her to fall. Id.

Plaintiff attributes the cause of her fall to jailers' placement of her, as a "blind" inmate, on an upper bunk and the rush associated with the inmate count policy. Id. at 121. However, Rogers

3

County has a policy under which disabled inmates may be exempt from "regular programs."[3] Dkt. # 42, Ex. G, Special Health Care Programs. Such "regular programs" include inmate counts. See Dkt. # 42, Ex. B, Deposition of Sneed, at 73. According to Sneed, it is the jail's policy and procedure to place a visually impaired inmate "into, there again, the isolation cell, . . . a cell with a glass bubble to where they could come out, get fresh air, have a shower. And it would not have been needed for [plaintiff] to come out and line up from that cell if she was having impairments." Id.

It is undisputed that plaintiff injured her right knee following her descent from the upper bunk on July 6, 2002. Jailers provided ice and ibuprofen to plaintiff within twenty minutes of the accident. According to plaintiff, jailers were aware that she was experiencing ongoing pain in her knee but delayed further medical care for two days. Plaintiff alleges that defendant forced her to walk in shackles after her knee injury and before seeing a doctor. Dkt. # 43, Ex. A, Deposition of Smith, at 132. On the morning of July 7, 2002, a jailer allegedly told plaintiff she would be taken to the hospital but she was not taken that day. Id. at 128.

Plaintiff testified that Shari Mallory-Copenhaver, the Rogers County Jail Administrator, came into plaintiff's cell on July 8, 2002 and "yelled" at the other jailers. Dkt. # 43, Ex. A, Deposition of Smith, at 180. Mallory-Copenhaver testified that she was notified of plaintiff's injury within twenty-four hours of the fall, as required by policies and procedures. Dkt. # 42, Ex. C, Deposition of Mallory-Copenhaver, at 92. Medical records, dated July 8, 2002, show that plaintiff

---

[3] "Any inmate who may not, for medical reasons, participate in the regular programs of the jail will be the subject of a written report to the inmate management team outlining the medical restrictions that prohibit the inmate's participation. The inmate management team and the medical staff will evaluate the report and consider possible transfer of the inmate to a more appropriate facility." Dkt. # 42, Ex. G, Special Health Care Programs.

4

was experiencing sharp pain in her right knee and unable to bear her weight. Dkt. # 42, Ex. F, Emergency Department Records. Those records also note that the x-ray showed "minimal degenerative joint disease, otherwise unremarkable right knee." Id.

Plaintiff was released from Rogers County Jail on July 15, 2002. Post-release medical records show that plaintiff underwent several surgical operations on her right knee. Dkt. # 43, Ex. B, I and J. Plaintiff alleges that the fall shattered her kneecap, that she sustained a permanent injury, and "it's never going to be the same" because of the incident on July 6, 2002. Dkt. # 43, Ex. A, Deposition of Smith, at 135.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment.  Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Plaintiff alleges that defendant is liable under 42 U.S.C. § 1983 for the July 2002 knee injury. She claims the RCCJA violated her constitutional rights under the Eighth and Fourteenth Amendments.  The Eighth Amendment places a constitutional duty on government entities to take "reasonable steps to protect the prisoners' safety and bodily integrity."  Berry v. City of Muskogee, Oklahoma, 900 F.2d 1489, 1499 (10th Cir. 1990).[4]  The RCCJA, being such an entity, "is liable under section 1983 if there is a direct causal connection between the municipal policies in question and the constitutional deprivation."  Id. (citing City of Canton v. Harris, 489 U.S. 378 (1989)).

Section 1983 provides, in pertinent part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

---

[4] The Eighth Amendment applies only after an adjudication of guilt.  However, Eighth Amendment protections apply to pretrial detainees, such as plaintiff, through the Due Process Clause of the Fourteenth Amendment.  See Bell v. Wolfish, 441 U.S. 520, 535 (1979); Lopez v. LeMaster, 172 F.3d 756, 759 n.2 (10th Cir. 1999).

6

42 U.S.C. §1983. It is well-settled law that a governmental entity may not be held liable solely because it employs a tortfeasor -- that is, a governmental body may not be held responsible under a respondeat superior theory of liability. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [section] 1983." Id. at 694; Meade v. Grubbs, 841 F.2d 1512, 1529 (10th Cir. 1988).

Plaintiff's claim has three aspects: inappropriate housing; injury to her right knee; and delayed medical care. Based on the record, there are three opportunities where jailers could have taken a different course of action which may have prevented plaintiff's injuries: (1) intake jailer could have determined plaintiff to be disabled and entitled to accommodation, thereby preventing her ascent to an upper bunk; (2) jailer could have accommodated plaintiff's descent from upper bunk for the inmate count; and (3) jailers could have brought plaintiff to the hospital earlier. In order to hold the RCCJA liable, plaintiff must show that "the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action." Ledbetter v. City of Topeka, Kansas, 318 F.3d 1183, 1189 (10th Cir. 2003) (quoting Camfield v. City of Oklahoma City, 248 F.3d 1214, 1229 (10th Cir. 2001)).

There are five ways to establish an official policy or custom sufficient to impose section 1983 liability on a municipal government: actions of the municipal legislative body; policies of a municipal agency or board pursuant to authority delegated by the legislative body; actions by those with final decision-making authority; policies of inadequate training or supervision; and custom.

7

Plaintiff argues that the RCCJA is liable based on: the jail policy for inmate counts which rushed her off of the upper bunk; the customs of inappropriately housing blind inmates and delaying medical care; and inadequate training.

First, plaintiff argues that the "Inmate Accountability" policy directed the jailer to rush the inmates, thereby causing plaintiff to fall and injure herself. Dkt. # 43, Ex. K, Inmate Accountability ("Each count must be made accurately and promptly."). See Monell, 436 U.S. at 692 (section 1983 "plainly imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights"). However, jail policy permits disabled inmates to be excluded from "regular programs." Dkt. # 42, Ex. G, Special Health Care Programs. This policy exemption for disabled inmates shows that it was not a policy that placed plaintiff at risk of a fall, but rather individual jailers' failure to designate plaintiff as disabled and in need of available accommodation. Defendant's policies endorse accommodation for blind inmates. Plaintiff has failed to connect defendant's official policies to the alleged violations. Accordingly, the Court finds that plaintiff has failed to show that a genuine issue of material fact exists as to her claim that an official policy caused the alleged constitutional violations, and the RCCJA is entitled to summary judgment on this claim.

Next, plaintiff argues that defendant tolerated unconstitutional customs among jailers. See Monell, 436 U.S. at 609-91. To survive summary judgment, plaintiff must present evidence of widespread and persistent violations that constitute custom for which defendant may be held liable under section 1983. See Lankford v. City of Hobart, 73 F.3d 283, 286 (10th Cir. 1996); Bennett v. City of Slidell, 728 F.2d 762, 768 (5th Cir. 1984) ("Sufficient duration or frequency of abusive

8

practices, or other evidence, must warrant a finding of knowledge on the part of the governing body that the objectionable conduct has become customary practice of city employees.").

Plaintiff alleges that the RCCJA acquiesced to a custom of failing to accommodate blind inmates and a custom of delaying medical care. Even assuming, arguendo, that jailers were aware of plaintiff's alleged blindness and disregarded the associated risks of placing plaintiff in an upper bunk and that they knowingly delayed necessary medical care, plaintiff has submitted no evidence that any final policymaker knew of the jailers' failure to abide by established policies. It is not sufficient to present evidence of an isolated violation. Lankford, 73 F.3d at 286 (finding that "isolated and sporadic acts" do not amount to a county custom). Plaintiff submits evidence of her individual experience without presenting evidence of a prevalent custom in the Rogers County Jail. In fact, the jail has an accommodations policy for disabled inmates and a medical care policy which requires notification to the jail administrator within twenty-four hours of a non-emergency injury. There is no evidence that the RCCJA was on notice that jailers were not in full compliance with these policies.

Evidence of a single incident of unconstitutional activity is insufficient to assign liability on a municipality, unless that incident was under the direction of final policymakers. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986); Meade, 841 F.2d at 1529. Accordingly, the Court finds that plaintiff has failed to show that a genuine issue of material fact exists as to her claim that an RCCJA custom caused the alleged constitutional violations, and the RCCJA is entitled to summary judgment on this claim.

Finally, the Supreme Court has held that, even in the absence of an affirmative policy, a failure on the part of a municipality to train employees may, in limited circumstances, provide a

basis for liability.  Harris, 489 U.S. at 387.  To establish liability based on a policy of inadequate training or supervision, plaintiff must present evidence that the municipality was deliberately indifferent to a substantial risk of significant harm.  Harris, 489 U.S. at 389 ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a policy as defined by our prior cases – can a city be liable for such a failure under section 1983.").  A government entity can be liable for deliberate indifference under section 1983 if it has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm.  See Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 405 (1997) (concluding that a single instance of a sheriff's inadequate screening of a deputy was not sufficient to prove that the municipality caused the injuries).

Plaintiff has not presented evidence of prior complaints to the RCCJA regarding failures to accommodate disabled inmates or delays in medical care.  One incident is an insufficient basis to hold a municipality liable for an alleged policy of inadequate training or supervision.  See City of Oklahoma v. Tuttle, 471 U.S. 808, 841 (1985) ("proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell").  Based on the record, the Court cannot infer that the RCCJA was on notice of jailers' alleged substandard performances.  See Barney v. Pulsipher, 143 F.3d 1299 (10th Cir. 1998) (holding that the county was not liable under section 1983, pursuant to failure to train theory, where there was no evidence of previous violations to put county on notice that its training program was deficient).

Plaintiff has presented no evidence relating to the training procedures utilized by the RCCJA. Moreover, plaintiff has failed to submit evidence that defendant was made aware of the alleged

wrongdoing of its jailers. In view of the complete absence of evidence of inadequate training procedures or failure to discipline wrongdoing, this Court has no choice but to grant defendant's motion for summary judgment as to plaintiff's failure to train claim. Celotex, 477 U.S. at 325 (noting that burden on party moving for summary judgment is discharged "by showing--that is pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case").

## IV.

Assuming, arguendo, that the Rogers County jailers acted in violation of plaintiff's federal rights, there is no evidence in the record from which this Court could conclude that the jailers acted pursuant to an official policy or custom of the RCCJA. See Meade, 841 F.2d at 1528 (holding that county commissioners could not be held liable under section 1983 unless commissioners were affirmatively linked with the alleged assault). A municipality "may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees." Pulsipher, 143 F.3d at 1307. Plaintiff has "failed to connect" defendant's policies and customs to the alleged constitutional violations. Ledbetter, 318 F.3d at 1187.

In sum, the Court finds that plaintiff has failed to submit evidence of defendant's requisite knowledge of jailers' alleged deviations from established policy. For the above reasons, defendant's motion for summary judgment (Dkt. # 42) is hereby **granted.**

**IT IS SO ORDERED** this 5th day of December, 2005.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

11